**Johnny DOE, a minor, by his mother and next friend, Ms. Jane DOE, Plaintiff,**

v.

**BELLEVILLE PUBLIC SCHOOL DISTRICT NO. 118 and The Board of Education of Belleville Public School District No. 118, Defendants.**

**Civ. No. 87–3836.**

United States District Court, S.D. Illinois, East St. Louis Division.

Nov. 6, 1987.

Robert J. Hillebrand, Hillebrand and Stubblefield, Belleville. Harvey Grossman, Alan K. Chen, The Roger Baldwin Foundation of ACLU, Inc., Chicago, for plaintiff.

William D. Stiehl, Jr., Peter I. Albrecht, Jeffrey R. Zehe St., Michael R. Grimm, McRoberts, Sheppard, Wimmer, Belleville, for defendants.

## MEMORANDUM AND ORDER

FOREMAN, Chief Judge:

This matter is before the Court on defendants' Motion to Dismiss (Document No. 4a). The basis for the motion is that the plaintiff has failed to exhaust his administrative remedies as required by The Education for All Handicapped Children Act (EAHCA), 20 U.S.C. § 1415(e)(2). *See also Smith v. Robinson*, 468 U.S. 992, 104 S.Ct. 3457, 82 L.Ed.2d 746 (1984); *Timms v. Metro. Sch. Dist. of Wabash County, Ind.*, 722 F.2d 1310 (7th Cir.1983).

## BACKGROUND

Plaintiff Johnny Doe is a six-year-old male child who was diagnosed as having Hemophilia B as an infant. Subsequent to that diagnosis, made in August of 1986, he was diagnosed as having Acquired Immune Deficiency Syndrome (AIDS). During the 1986–87 school year, Johnny attended kindergarten at a public school in Harmony School District No. 175. Sometime before the end of that school year, Johnny and his mother moved to a new school district where, by virtue of the timing of the move, he was required to enroll in the first grade in Belleville District No. 118.

School officials were notified that Johnny was a hemophiliac and that he had been diagnosed as having AIDS. Subsequent to that notification it appears the Board of Education decided that it needed to formulate a "policy" to serve as their basis in placing him. The final version of this policy, titled "Policy Regarding Children With Chronic Communicable Diseases," was adopted by the Board on July 21, 1987. Following the guidelines set forth in the policy, the Board appointed an interdisciplinary Placement Evaluation Committee which supplied a factual analysis of plaintiff's case to the Board for its use in determining appropriate placement for him. On August 25, 1987, the Board met in executive session with plaintiff's mother and her attorney and thereafter unanimously decided to exclude Johnny from the normal classroom and, instead, to provide him with a tutor in his home. It is this exclusion that plaintiff alleges gives rise to his claim of discrimination in violation of Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794.

## DISCUSSION

The defendants urge this Court that it lacks subject matter jurisdiction over the case by virtue of plaintiff's alleged failure to exhaust his state law administrative remedies as required by 20 U.S.C. § 1415(e)(2) and the law of this Circuit. *See Timms, supra,* 722 F.2d 1310. The plaintiff, on the other hand, contends that he is not "handicapped," as that term is statutorily defined in EAHCA, and thus is not afforded a remedy by that Act. Consequently, plaintiff argues that he is not required to exhaust his administrative remedies because his claim does not arise under EAHCA, but rather under the Rehabilitation Act. Exhaustion of remedies is not

required under the Rehabilitation Act. *Timms,* supra, at 1318, n. 5.

Because defendants' argument relies on the applicability of EAHCA to the plaintiff, the Court must determine if plaintiff's diagnosis of AIDS brings him within the statutory definition of a handicapped individual and is, therefore, subject to the exhaustion requirement.[1] EAHCA defines "handicapped children" as children who are:

> mentally retarded, hard of hearing, deaf, speech or language impaired, visually handicapped, seriously emotionally disturbed, orthopedically impaired, *or other health impaired children,* or children with specific learning disabilities, *who by reason thereof require special education and related services.*

20 U.S.C. § 1401(a)(1). [Emphasis added.] In this case the parties agree that the only category into which Johnny fits is that of "other health impaired children." That phrase is defined as children who have:

> [l]imited strength, vitality or alertness due to chronic or acute health problems such as a heart condition, tuberculosis, rheumatic fever, nephritis, asthma, sickle-cell anemia, *hemophilia,* epilepsy, lead poisoning, leukemia, or diabetes, *which adversely affects a child's educational performance.*

34 C.F.R. § 300.5(b)(7). [Emphasis added.]

In applying these definitions to the plaintiff, the Court concludes that three tests must be met before the provisions of EAHCA can be made to apply in this case: 1) there must be limited strength, vitality, or alertness due to chronic or acute health problems, 2) which adversely affects a child's educational performance, and 3) which requires special education and related services. Here, the record reveals virtually no evidence that plaintiff suffers from limited strength, vitality, or alertness.[2] Furthermore, given such evidence as is in the record of Johnny's limited strength, there is virtually no evidence that this limitation has adversely affected his educational performance.[3]

The Court also finds it noteworthy that, while the defendants assert that Johnny's hemophilia brings him within the statutory definition of "other health impaired children," the health impairment they are apparently concerned with is Johnny's AIDS virus.[4] AIDS is not listed as an example of an acute or chronic health problem in the statute. Furthermore, the United States Department of Education, directly addressing the applicability of EAHCA to AIDS victims, has opined that a child with AIDS *might* be considered "handicapped" under EAHCA, depending upon his or her condition. 2 EHA Rulings, Education for the Handicapped Law Report (EHLR) (CRR) 211:343 (Oct. 26, 1984). More significantly, the Department's opinion concludes that a child with AIDS is *not* considered to be "handicapped," as the term is defined in the EAHCA, unless he or she needs special education. *Id.,* at 211:344. With respect to the availability of special education programs for children with AIDS, the opinion states:

> Children with AIDS could be eligible for special education programs under the

---

1. It appears to the Court that defendants contend that the mere diagnosis of an individual as having AIDS renders that individual "handicapped" *per se* within the meaning of EAHCA.

2. In fact, the plaintiff's treating physician wrote in a letter to the Board that Johnny is a "robust, healthy ... active child." Moreover, the school district's own psychologist, after extensive testing, noted in her deposition that the plaintiff was able to work for appropriate periods of time without excessive tiring when physical exertion was not involved.

3. While the defendants strongly urge that an admittedly high degree of absenteeism is itself an adverse effect on his educational performance, there is no suggestion at all on their part that the absenteeism has resulted in either lower grades or a decreased level of comprehension or ability to learn. Giving the term "educational performance" its plain meaning, the Court concludes that defendants' argument on this point is for the most part specious.

4. In their reply brief, defendants assert "... there is little doubt that plaintiff's limited 'strength, vitality, or alertness' is due to his 'chronic or acute health problems;' the plaintiff is afflicted with a full blown case of AIDS and his condition is deteriorating." Reply Brief. p. 5.

category of 'other health impaired,' if they have chronic or acute health problems which adversely affect their educational performance.

*Id.*

■ Based on the Department of Education's opinions and the tenor of the statutory language, the Court concludes that EAHCA would apply to AIDS victims *only* if their physical condition is such that it adversely affects their educational performance; i.e., their ability to learn and to do the required classroom work. There is no such showing at the present time, and it seems clear that the only reason for the Board's determination that Johnny needs "special education" is the fact that he has a contagious disease—AIDS. In the Court's opinion, given the facts of this case as they now exist, the provisions of EAHCA would not apply to the plaintiff at this time.

This conclusion is further buttressed by the Board's own actions. For example, at no time did the Board or its counsel advise the plaintiff that Johnny's placement was being treated as an individual education program (IEP) under EAHCA. More significantly the "policy" promulgated by the Board did not provide the rather detailed procedural safeguards mandated by EAHCA. In fact, the policy itself states that any appeal procedures otherwise available to an individual (such as those provided in EAHCA), which are contrary to those expressly set forth in the policy, are not applicable. Also, there appears to have been no policy at all regarding placement of children with contagious diseases until the plaintiff attempted to enroll in the district.[5] Thus, the policy appears to be more an *ad hoc* reaction to plaintiff's case than a well-established plan promulgated by the district under the auspices of EAHCA.

For these reasons, the Court is of the opinion that the Board itself did not consider Johnny's situation one to which EAHCA would apply. That being the case, the Court finds that the plaintiff is not required to exhaust his administrative remedies, and that it has subject matter jurisdiction over this case by virtue of 28 U.S.C. § 1331.

■ Finally, even assuming *arguendo* that EAHCA does apply and exhaustion is required, it is well established that a plaintiff need not exhaust administrative remedies where the exercise of those remedies would be futile. *Riley v. Ambach,* 668 F.2d 635, 641 (2nd Cir.1981). Furthermore, exhaustion is not required if the only available administrative remedy is plainly inadequate. *Riley,* supra, *id.*

Here, it is abundantly clear from the record that exhaustion would be futile. This conclusion is reached for a variety of reasons, not the least of which is the Board's failure to follow the Illinois Department of Public Health's guidelines for placing children with contagious diseases. The Board's failure to follow the guidelines apparently resulted in the director of that agency writing a letter to the editor of a local newspaper critical of the Board's decision. Additionally, and more importantly, there is the fact that the Board and its counsel apparently advised the plaintiff that his only mechanism for appeal of their decision was the monthly review provision set forth in the policy.[6]

An even cursory review of the language of that provision reveals it to be plainly inadequate. It provides no mechanism for an independent review of an individual's

5. The policy itself was not adopted by the Board until late July of 1987, several months *after* the Board became aware that Johnny had AIDS and wished to enroll in their district.

6. Paragraph VII of the policy provides:
The condition of the student shall be monitored on a monthly basis by the school district nurse to determine whether the student's placement continues to be appropriate. In addition, the Placement Evaluation Committee shall regularly reevaluate the student. In no event shall the student be reevaluated by the Placement Evaluation Committee less frequently than once every twelve months. The Placement Evaluation Committee shall immediately report its findings to the Board of Education, which shall determine if a change in placement is necessary. In the event of an emergency, however, the Superintendent shall have the right to take appropriate action, which shall be reviewed by the Board of Education as soon as possible.

case by any entity other than the Board, which of course made the original decision. Furthermore, it vests the medical decision-making in the school district nurse as opposed to a doctor and, in any event, does not seem to require expertise in infectious or contagious diseases on the nurse's part. These defects, when coupled with the language exempting the policy from other appellate mechanisms inconsistent with its terms, convince the Court that as a practical matter no meaningful administrative remedies exist for this plaintiff. Thus, the Court finds that even if EAHCA does apply, exhaustion in this case would not be required because it would indeed be futile.[7]

For the above-stated reasons, the Court is of the opinion that defendants' Motion to Dismiss (Document No. 4a) should be, and hereby is, DENIED.

IT IS SO ORDERED.

---

7. The Court further notes that where a local agency (the Board) does not comply with the procedural safeguards detailed in 20 U.S.C. § 1415, exhaustion is not required. *Doe by Gonzales v. Maher*, 793 F.2d 1470, 1490–91 (9th Cir.1986). In this case, the Board not only has not complied with the statutory safeguards, it went so far as to attempt to make them inapplicable in its policy. *See* Policy, paragraph VI.