MARY P. and Peter P., on their own behalf and as parents and next friends of Michael P., a minor, Plaintiffs,

v.

ILLINOIS STATE BOARD OF EDUCATION, Robert Leinenger, Mary Jane Broncato, Gail Lieberman, Terry David, Charles Donegan, Roger Garvelink, and Board of Education of Downers Grove Grade School District No. 58, Defendants.

Civil No. 94 C 2491.

United States District Court, N.D. Illinois, Eastern Division.

March 21, 1996.

Margie Best, Chicago, IL, for plaintiffs.

Diann Karen Marsalek, Illinois Attorney General's Office, Chicago, IL, for Illinois State Board of Education, Robert Leininger, Mary Jayne Broncato, Gail Lieberman, Terry David, Charles Donegan.

John A. Relias, Franczek, Sullivan, Mann, Crement, Hein, Relias, P.C., Chicago, IL, John Lawrence Wren, Franczek & Sullivan, Chicago, IL, for Roger Garvelink, Board of Education of Downers Grove Grade School District # 58.

## MEMORANDUM OPINION AND ORDER

LEINENWEBER, District Judge.

Plaintiffs, Michael P. and his parents, brought an action under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 et seq., alleging that defendants, which include the Illinois State Board of Education, Michael's school district, administrators, and teachers, wrongfully denied Michael special education services for his speech impairment. Plaintiffs and defendants now both move for summary judgment.

### I. BACKGROUND

Michael is a seven-year-old boy who suffers from a speech impairment due to the presence of small nodules on his vocal cords. After Michael initially was diagnosed with this disability in March 1991, his parents requested an evaluation by his local school district to determine his eligibility for special services to be provided by the school. Throughout the next two years, plaintiffs and defendants met at multidisciplinary conferences ("MDC") where plaintiffs presented the recommendations of Michael's own private speech pathologists who asserted the need for services. At the MDCs, defendants steadfastly denied Michael's eligibility for such services. The MDC reports indicate that an Individualized Education Program ("IEP") was never formulated. Admin.R. 838, 857, 867.

The parties' dispute culminated in a Level 1 Due Process Hearing in May 1993. At the hearing, both parties presented evidence regarding Michael's eligibility for services under the IDEA. Witnesses for both parties generally agreed that Michael's voice was not normal. In particular, all noted that the following qualities appeared at times: hoarseness, squeakiness, fluctuations in pitch, strain, and low volume levels. Admin.R. 534, 668–673, 878–79.

However, witnesses for each party disputed whether Michael's condition adversely affected his educational performance. Plaintiffs' witnesses described the effect of Michael's condition on his ability and willingness to speak. They cited episodes where Michael's voice rendered him wholly unintelligible and where he was reluctant to offer vocal responses to oral questions. See, e.g., Admin.R. 660–62. The school's witnesses focused on Michael's academic and social aptitude. They cited his ability to participate in all school activities with competency and his popularity among his classmates. See, e.g., Admin.R. 534.

At the hearing, both parties also raised the issue of what services Michael actually required. Plaintiffs' witnesses proposed that the school provide Michael with thirty minutes of speech therapy per week. Admin.R. 492, 613. The school's witness proposed that 1) school staff be educated on Michael's condition and that they "monitor" Michael's voice to determine if it affects him; and 2) if his condition did not improve, the school

would convene an MDC to reevaluate him. Admin.R. 488, 539. The school's witness suggested the formulation of an IEP and direct speech therapy only as a last resort. *Id.*

The Level 1 hearing officer made several factual determinations. She found: 1) Michael was performing at an age-appropriate educational level (Admin.R. 1307); and 2) despite his academic performance, Michael's disability was severe enough to affect his educational performance due to its effect on his overall ability to communicate. Admin.R. 1308.

The Level I hearing officer determined that Michael was eligible for services under the IDEA. · Admin.R. 1310. She noted that the standard for eligibility under the IDEA is whether the disability "adversely affects" the student's educational performance. She based her determination on a 1980 Department of Education, Office of Special Education Program ("OSEP") opinion letter. Admin.R. 1308. The letter stated that academic achievement was not the sole benchmark of an adverse affect on educational performance with regard to speech impairment; rather, the opinion of experts should determine whether a speech impairment was severe enough to adversely impact a child's educational performance. Admin.R. 289–292. Guided by the letter, the Level I hearing officer credited plaintiffs' experts' opinions that Michael's disability was so severe as to warrant special services, despite her finding that Michael's speech impairment had no apparent impact on his academic achievement. Admin.R. 1308. She accordingly ordered the school to provide Michael with thirty minutes of speech therapy services per week and to convene a MDC to determine what other services he might require. However, she denied plaintiffs reimbursement for private speech therapy because she found the school had acted in good faith. Admin.R. 1310.

Defendants appealed this decision in a Level 2 Due Process Hearing. The Level 2 hearing officer did not hold a new evidentiary hearing, but accepted a supplemental opinion from an otolaryngologist, proffered by the school, that a student with Michael's condition did not qualify for services. Supp.Ad-min.R. ex. 1. This opinion was not based upon an examination of Michael, but rather upon the witness's experience with vocal nodule patients and his review of the Level I record. *Id.*

The Level 2 hearing officer reversed the Level 1 hearing officer based on a misapplication of the legal standard to determine eligibility. He held that:

> The record shows that M.P.'s voice disorder did not interfere with his academic performance. Academically he was equal to or superior to most of his classmates. Furthermore, his social adjustment to his classmates was not adversely affected. The District's proposed IEP was reasonably calculated to enable M.P. to perform academically equal to his classmates. As stated in *Rowley* the student's IEP should be reasonably calculated to enable the student "to achieve passing marks and advance from grade to grade, if the child is being educated in the regular classroom of the public education system." The District has met its legal obligation to M.P. The present law does not require more.

Admin.R. 10–11. Though he did not directly address the question of eligibility, the Level II hearing officer implicitly determined that an adverse effect on *educational performance* must include an effect on age-appropriate *academic performance.* In essence, he found the two terms synonymous. He also refused to credit the letter from the Office of Special Education, stating that the letter was due no deference because it was contrary to the language of the IDEA and to the Supreme Court's holding in *Board of Ed. v. Rowley,* 458 U.S. 176, 102 S.Ct. 3034, 73 L.Ed.2d 690 (1982). Admin.R. 10, 11. Because the Level 1 hearing officer specifically found no effect on age-appropriate academic performance and because the district's "proposed IEP [was] reasonably calculated to enable M.P. to achieve educational benefit," the Level 2 hearing officer reversed. Admin. R. 12–13.

Plaintiffs appealed the decision to this court, arguing that the Level 1 hearing officer correctly applied the legal standard to determine eligibility under the IDEA by relying on an interpretive agency letter. Plain-

tiffs asked for the reinstatement of the Level I order with the caveat that plaintiffs be reimbursed for all previous speech therapy and receive any other equitable relief. Defendants responded, arguing that the Level 2 hearing officer correctly interpreted the IDEA to require that a disability have an adverse *academic* impact before a student is eligible for services.

## II. STANDARD OF REVIEW

■ Review of IDEA due process hearings involves a mixed question of law and fact. *See Board of Ed. v. Illinois St. Bd. of Ed.*, 41 F.3d 1162, 1166–67 (7th Cir.1994); *Oak Park and River Forest High Sch. v. Illinois St. Bd. of Ed.*, 886 F.Supp. 1417, 1419 (N.D.Ill.1995). The court must give "due weight" to all factual determinations, but review all legal conclusions *de novo. Id.* In addition, summary judgment is proper where there are no factual disputes and where the court is asked only to resolve issues of law. *LTV Steel Co. v. Northwest Eng'g & Constr., Inc.*, 41 F.3d 332, 334 (7th Cir.1995); *American Jewish Cong. v. City of Chicago*, 827 F.2d 120, 123 (7th Cir.1987).

Because both parties concede the factual record of the proceedings below, the court's main task is to ensure the application of the correct legal standard to the salient facts. Specifically, the court must determine if a student with a speech impairment is eligible for special services under the IDEA when his disability does not impact his academic achievement.

## III. ANALYSIS

The purpose of the IDEA is to ensure that "all children with disabilities have available to them a free appropriate public education." 20 U.S.C. § 1400(c); 34 C.F.R. § 300.1. The issues raised in the present case are whether plaintiff qualifies as a child with a "disability" and, if so, what relief is warranted.

The process by which a student is granted special education services is by no means simple. Generally, the student's family, teachers, administrators, and experts all participate to determine if the student is eligible for services and, if so, which services are appropriate.

■ The first step is to determine eligibility based upon statutory criteria and expert opinion. Generally, a multidisciplinary conference ("MDC") convenes to examine data and determine eligibility. *See* Ill.Admin.Code Tit. 23, § 226.5 (1995). To be eligible for special education, the student must fit the statutory definition of a "child with a disability." 20 U.S.C. § 1401(a)(1)(A); *see also Doe v. Belleville Public School*, 672 F.Supp. 342, 344 (S.D.Ill.1987) (applying statutory criteria to examine eligibility); *Timothy W. v. Rochester, N.H. School Dist.*, 875 F.2d 954, 961 (1st Cir.) (same), *cert. denied*, 493 U.S. 983, 110 S.Ct. 519, 107 L.Ed.2d 520 (1989); *Yankton Sch. Dist. v. Schramm*, 900 F.Supp. 1182, 1190 (D.S.D.1995) (same); *Doe v. Board of Ed.*, 753 F.Supp. 65, 69–70 (D.Conn.1990) (same). All of the statutory definitions require that the disability "adversely affect the child's educational performance." *See* 34 C.F.R. § 300.7(b)(1–13); *Doe*, 753 F.Supp. at 69; *Doe*, 672 F.Supp. at 344.

The C.F.R. specifies evaluation procedures to be used for determining whether a child fits the statutory definition of a "child with disabilities." *See* 34 C.F.R. §§ 300.7(a)(1), 300.500(b), 300.530–300.534. These procedures require the examination of "a variety of sources, including achievement tests, teacher recommendations, physical condition, social or cultural background, and adaptive behavior." 34 C.F.R. § 300.533(a)(1).

If a student is deemed eligible at the MDC, then the participants determine precisely what services are appropriate. These decisions are outlined in an Individualized Education Program ("IEP"). *See* 34 C.F.R. §§ 300.340–300.350; Ill.Admin.Code Tit. 23, §§ 226.5, 226.562 (1995).

If the parents disagree with the MDC's determination of eligibility or the formulation of the IEP, they may challenge these decisions at an impartial "due process" hearing. 20 U.S.C. § 1415(b); 34 C.F.R. §§ 300.500–300.515; Ill.Admin.Code Tit. 23, §§ 226.605–226.698 (1995). At the due process hearing, both parties may raise issues regarding the student's eligibility, as well as any proposal for services. Ill.Admin.Code Tit. 23,

§ 226.605 (1995). The hearing officer is empowered to determine issues of eligibility and appropriate services in light of the evidence presented, and he may order the provision of such services if he determines that the student is eligible. Ill.Admin.Code Tit. 23, § 226.675 (1995).

■ Plaintiffs claim that Michael is eligible for services under the IDEA because of his speech impairment. The C.F.R. defines speech impairment as "a communication disorder such as stuttering, impaired articulation, a language impairment, or a voice impairment that adversely affects a child's educational performance." 34 C.F.R. § 300.7(b)(11) (1995). The Illinois Administrative Code defines speech impairment as "deviations of speech and/or language processes which are outside the range of acceptable deviation within a given environment and which prevent full social or educational development." Ill.Admin.Code Tit. 23, § 226.552(c) (1994).

Plaintiffs argue that speech impairments are different from other disabilities and require a different eligibility analysis. As noted above, the procedures to determine whether a student is a "child with a disability" and thus eligible for services under the IDEA is based on an examination of "a variety of sources, including achievement tests, teacher recommendations, physical condition, social or cultural background, and adaptive behavior," 34 C.F.R. § 300.533(a)(1). The inclusion of "achievement tests" implies that academic achievement may be a component of any determination that a disability "adversely affects a child's educational performance." The issue is whether it is required.

Plaintiffs assert it is not required—at least for speech impairments—by relying on the advisory note which follows § 300.533(a)(1) and on an agency letter interpreting the same. The advisory note attempts to clarify the criteria for evaluating speech-impaired students:

The [school] would not have to use all the sources in every instance. The point of the requirement is to ensure that more than one source is used in interpreting evaluation data and in making placement decisions. For example, while all of the named sources would have to be used for a child whose suspected disability is mental retardation, they would not have to be necessary for certain other children with disabilities, such as a child who has a severe articulation impairment as his primary disability. For such a child, the speech-language pathologist, in complying with the multiple source requirement, might use: (1) A standardized test of articulation, and (2) observation of the child's articulation behavior in conversational speech.

34 C.F.R. § 300.533 note (1995). The comment acknowledges that every criterion is not applicable to the evaluation of every disability, and more specifically, in the evaluation of a student with a communicative speech disorder, such as plaintiff's, focus on an objective level of speech ability and the observation of speech behavior is paramount.

The Office of Special Education and Rehabilitative Services (formerly entitled Office of Special Education Programs or "OSEP"), which is the principal agency empowered to administer the IDEA, 20 U.S.C. § 1402, abides by the same interpretation. In a 1980 letter, Assistant Secretary Edwin Martin articulated OSEP's position on the procedures to determine which speech impairments were eligible for services under the IDEA. He stated:

It is clear that, in establishing the existence of a speech/language impairment that is "handicapping" in Part B terms, a professional judgment is required. The basis for that judgment is the child's performance on formal and/or informal measures of linguistic competence and performance, rather than heavy reliance on the results of academic achievement testing. The impact of the child's communicative status on academic performance is not deemed the sole or even the primary determinant of the child's need for special educational services. It is the communicative status—and professional judgments made in regard to assessments of communicative abilities—which has overriding significance.

In the event that the speech-language pathologist establishes through appropriate

appraisal procedures the existence of a speech/language impairment, the determination of the child's status as a "handicapped child" cannot be conditioned on a requirement that there must be a concurrent deficiency in academic performance. Admin.R. 291. OSEP reaffirmed its position in two 1989 letters by Acting Assistant Secretary Patricia McGill Smith, Admin.R. 285, and Director Judy Schrag, Admin.R. 283–84, published at 16 Ed. Health L.Rptr. 82, 82–83 (1990).

■ The court must determine the proper weight to assign the advisory note and the interpretive agency letter. Advisory notes or commentary are "akin to an agency's interpretation of its own legislative rules [which] must be given 'controlling weight unless it is plainly erroneous or inconsistent with the regulation.'" *Stinson v. United States,* 508 U.S. 36, 45, 113 S.Ct. 1913, 1919, 123 L.Ed.2d 598 (1993) (citing *Bowles v. Seminole Rock Co.,* 325 U.S. 410, 414–15, 65 S.Ct. 1215, 1217, 89 L.Ed. 1700 (1945)).

■ Interpretive agency letters are afforded the same deference. They aid the court "insofar as" or "to the extent that" they do not contradict clear statutory or regulatory mandates:

> In administrative law, [t]he first question is how the agency understands its own rules—for an agency possessed of the ability to adopt and amend rules also may interpret them, even if the interpretation chosen is not the one that most impresses an outside observer.

*Chicago School of Automatic Transmissions, Inc. v. Accreditation Alliance of Career Sch. and Colleges,* 44 F.3d 447, 450 (7th Cir.1994) (citing *Stinson,* 508 U.S. at 45–46, 113 S.Ct. at 1919); *see also Estate of Kurz v. Commissioner of Internal Revenue,* 68 F.3d 1027, 1030 (7th Cir.1995) (deferring to agency's interpretive letter because agency has "substantial leeway in their interpretation" of their own regulations); *Jones v. Illinois Dept. of Rehabilitation Serv.,* 689 F.2d 724, 729 (7th Cir.1982) (holding agency's interpretive letter was entitled to "substantial deference"). Therefore, the court will defer to the OSEP's interpretive letter unless it violates the clear meaning or purpose of the statute, the regulation, or applicable legal precedents.

Defendants assert that the OSEP letter violates two binding legal authorities. First, they assert that the letter runs counter to the C.F.R.'s definition of a speech impairment, which requires the disability "adversely affect the child's educational performance." 34 C.F.R. § 300.7(b)(11). Echoing the logic of the Level II due process hearing officer, the essence of defendants' argument is: "An adverse affect on educational performance necessarily requires an adverse affect on academic achievement."

The Code does not explicitly define how severe a disability must be before it "adversely affects the child's educational performance." As noted above, the procedures to determine eligibility—that is, whether a child has a disability and whether the disability adversely affects his educational performance—require the examination of "a variety of sources" of data. 34 C.F.R. § 300.533(a)(1). One source of data is academic aptitude testing. *Id.* However, in determining eligibility, the MDC must ensure that "no single procedure is used as the sole criterion for determining an appropriate educational program for a child." 34 C.F.R. § 300.532(d). Nothing in the Code explicitly requires the use of any single source; an analysis of the "variety of sources" upon which eligibility hinges may or may not examine aptitude tests. Therefore, the Code's language does not, on its face, contradict the agency's interpretation or the commentary following 34 C.F.R. § 300.533, upon which the OSEP letter principally relies.

Defendants' next argument is more complex. They assert that the letter runs contrary to *Board of Ed. v. Rowley,* again echoing the logic of the Level II hearing officer. A priori, the court notes that the issues in *Rowley* and the present case are different. In *Rowley,* the Supreme Court faced the issue of "what is meant by the [IDEA's] requirement of a 'free and appropriate education.'" 458 U.S. at 186, 102 S.Ct. at 3040. The present case concerns the appropriate standard for eligibility. In deciding the issue of eligibility, the Level II hearing officer mistakenly applied the standard to determine

whether an IEP was "appropriate." *See* Admin.R. 10–11. This error is not fatal to his decision if the standard for determining what services are "appropriate" for IEPs is the same as the proper standard for determining eligibility for special education services.

The court now turns to a comparison of those two standards. While the propriety of an IEP hinges on whether it provides a "free and appropriate education," as defined by the Court in *Rowley,* eligibility hinges on whether the student is a "child with a learning disability," 20 U.S.C. § 1401(a)(1), whose condition "adversely affects the child's educational performance." 34 C.F.R. § 300.7. The inquiry into whether an education is "free and appropriate" is whether the IEP is "reasonably calculated to enable the child to achieve passing marks and advance from grade to grade." *Rowley,* 458 U.S. at 203–04, 102 S.Ct. at 3049. Defendants contend that the inquiry into whether a student is eligible for services is identical, and that a child who is passing from grade to grade is not eligible for services under the IDEA. However, *Rowley* does not so hold.

The plaintiff in *Rowley* was a deaf student who challenged a school district's decision to deny her an in-class sign language interpreter under the IDEA. She was succeeding in her academic classes on the strength of her ability to read lips. She contended, however, that she could excel at her course work if the school would provide her an interpreter. The school denied that it had a responsibility to help her achieve the best possible education, arguing instead that "free and appropriate" meant only one which allowed a student to matriculate from grade to grade. Considering the plaintiff's successful academic achievement, the court determined that the student was receiving an "appropriate" education. 458 U.S. at 204, 102 S.Ct. at 3049.

However, the court limited its holding in a footnote. It noted:

> We do not hold today that every handicapped child who is advancing from grade to grade in a regular public school system is automatically receiving a "free and appropriate public education." In this case, however, we find [the student's] academic progress, when considered with the special services and professional consideration accorded by the [school] administrators, to be dispositive.

458 U.S. at 203 n. 25, 102 S.Ct. at 3049 n. 25. Thus, the Court noted that the simple fact that a student is advancing from grade to grade is not *per se* evidence of an appropriate education. It did not hold that the student was ineligible for services because she was achieving academically; rather, the Court simply deferred to the substantially factual determination made by the school in light of the student's academic progress with the assistance she was already receiving. Later in the opinion, the Court refused to "establish any one test for determining the adequacy of educational benefits conferred upon all children covered by the [IDEA]." 458 U.S. at 202, 102 S.Ct. at 3049.

Because the Supreme Court explicitly rejected the notion that the sole test for an appropriate education was advancement from grade to grade, or, in other words, academic achievement, the court finds no authority from *Rowley* to impose such a requirement on the test for eligibility in the present case. Therefore, the OSEP's letter is not contrary to the statute, regulation, or legal precedent.

 Because the interpretive letter does not offend any binding legal authority, the court defers to OSEP's interpretation and adopts its position with regard to the eligibility criteria for speech impairment. "Educational performance" means more than a child's ability to meet academic criteria. It must also include reference to the child's development of communication skills, social skills, and personality, as the Code, itself, requires. *See* 34 C.F.R. § 300.533(a)(1) (requiring analysis of a "variety of sources"). Whether the balance of these factors tips towards eligibility depends on the manner in which the specific disability afflicts the student. Today, the court simply holds that a child whom experts determine suffers from a speech impairment so severe as to inhibit his ability or desire to communicate with his teachers and peers meets the criteria of "speech impairment" which "adversely affects the child's educational performance" under 34 C.F.R. § 300.7(b)(11) and, thus, is a

"child with a disability" under 20 U.S.C. § 1401(a)(1).

Under this standard, the court determines that Michael meets the statutory criteria and is eligible for services under the IDEA. The Level I hearing officer found that Michael was a "child with a disability" and eligible for services, after weighing the evidence provided by both parties. Because defendants do not challenge the underlying facts contained in the record, the court declines to do so as well. Moreover, after a review of the hearing transcripts and records, the court is independently satisfied that the Level I hearing officer correctly determined Michael's eligibility based on the severity of his speech impairment. Accordingly, the court finds that Michael is "a child with a disability" and eligible for services under the IDEA.

## IV. RELIEF

■ Plaintiffs seek several forms of relief. First, they seek thirty minutes of speech therapy per week, as the Level I due process hearing officers initially ordered. A court may order that a school provide certain services as part of a student's IEP. See, e.g., Board of Ed. of Murphysboro v. Illinois State Bd. of Ed., 41 F.3d 1162 (7th Cir.1994) (ordering that a student be educated at specific educational facility). The Level I Hearing Officer was empowered to:

> determine whether the evidence establishes that the child has needs which require special education services ... [and] shall order the parties to take all steps necessary to ensure appropriate placement and services for any child found to be eligible.

Ill.Admin.Code Tit. 23, § 226.675 (1995). In reviewing the denial of eligibility and services, the Level I hearing officer rejected defendants' proposed services, ordered that defendants provide Michael with weekly speech therapy, and that an MDC convene to determine if any other services were appropriate.

After independently reviewing the evidence, and giving due weight to the determinations below, the court finds that the Level I hearing officer's order of weekly therapy was appropriate given Michael's disability.

Accordingly, defendant Downers Grove Grade School District is ordered to reconvene the MDC within 30 days from the date of this order to make a determination of Michael's eligibility and formulate an IEP which provides for services consistent with this court's findings and to determine if other services are appropriate at this time.

■ Next, plaintiffs seek reimbursement for all private speech therapy which they have provided to Michael since defendants refused Michael services at the MDC on February 16, 1993, which prompted plaintiffs to request a due process hearing. The Level I hearing officer denied plaintiffs reimbursement because the district "acted in good faith." Admin.R. 1310. Nowhere does federal or state law require a showing of bad faith before a successful student may be reimbursed for private appropriate services. Under previous incarnations of the IDEA, exceptional circumstances were needed to justify monetary relief, see Anderson v. Thompson, 658 F.2d 1205, 1213–14 (7th Cir. 1981). However, the Supreme Court's opinion in School Comm. of Town of Burlington v. Dept. of Ed., 471 U.S. 359, 368, 105 S.Ct. 1996, 2002, 85 L.Ed.2d 385 (1985) eliminates any such requirement. See, e.g., Max M. v. Ill. St. Bd. of Ed., 629 F.Supp. 1504, 1513 (N.D.Ill.1986) (relying on Burlington to reimburse parents for private appropriate services despite lack of bad faith by school district). Thus, plaintiffs are entitled to reimbursement "if a federal court concludes both that the public placement violated the IDEA, and that the private school placement was proper under the Act." Florence County Sch. Dist. v. Carter, 510 U.S. 7, 114 S.Ct. 361, 366, 126 L.Ed.2d 284 (1993); Burlington, 471 U.S. at 368, 105 S.Ct. at 2002. However, any reimbursement must be calculated at a rate that "qualified personnel would normally and reasonably charge for the [IDEA] services obtained privately by the deprived party." Max M., 629 F.Supp. at 1514 (regarding medical services).

The court has already determined that the "public placement" or, in this case, the lack thereof, violated the IDEA and that thirty minutes of speech therapy per week was

appropriate. Therefore, defendants are ordered to reimburse plaintiffs for the cost of private speech therapy which plaintiffs actually provided for the period of February 17, 1993 through the date of this order. The reimbursable cost is limited to thirty minutes per week.

Next, plaintiffs seek costs and attorney fees pursuant to 20 U.S.C. § 1415(e)(4)(B). The court may award costs and attorneys fees to the parents and child if they are the "prevailing party." 20 U.S.C. § 1415(e)(4)(B); *Hunger v. Leininger*, 15 F.3d 664, 670 (7th Cir.), *cert. denied,* — U.S. ——, 115 S.Ct. 123, 130 L.Ed.2d 67 (1994); *Max M. v. New Trier High Sch.,* 859 F.2d 1297, 1301 (7th Cir.1988). Those costs and attorneys fees may cover both the judicial and administrative proceedings. *Brown v. Griggsville Community Unit Sch. Dist.,* 12 F.3d 681, 683 (7th Cir.1993) (relying on *Moore v. District of Columbia,* 907 F.2d 165 (D.C.Cir.) (en banc), *cert. denied,* 498 U.S. 998, 111 S.Ct. 556, 112 L.Ed.2d 563 (1990)); *Reid v. Board of Ed.,* 765 F.Supp. 965, 967–68 (N.D.Ill.1991). Any fee award must be based on "rates prevailing in the community in which the action or proceeding arose for the kind and quality of services furnished." 20 U.S.C. § 1415(e)(4)(C).

In the present case, plaintiffs are the prevailing party. They have successfully challenged the denial of services, and they have obtained those services they initially sought. Therefore, the court awards plaintiffs all attorney fees from the two due process hearings and the present action in federal district court, subject to § 1415(e)(4)(C). Plaintiffs may submit a petition for fees and costs within 21 days of this opinion. Defendants may file objections within 14 days thereafter. Plaintiffs may then file a reply within 7 days thereafter.

## V. CONCLUSION

Defendants' motion for summary judgment is denied. Plaintiffs' cross-motion for summary judgment is granted. Downers Grove Grade School District is ordered to reconvene a multidisciplinary conference to formulate an IEP for Michael and discuss what

services are appropriate in light of this memorandum opinion and order within 30 days of the date of this order. Defendants are ordered to reimburse plaintiffs for any expenses incurred in providing Michael with appropriate private speech therapy from February 17, 1993 through the date of this order. Defendants are ordered to reimburse plaintiffs for attorney fees and costs for the administrative and judicial proceedings. Plaintiffs shall submit a petition for fees and costs within 21 days from the date of this order. Defendant shall file any objections within 14 days from the date thereafter. Plaintiffs shall file a reply within 7 days from the date thereafter. The court shall retain jurisdiction over these proceedings to monitor compliance.

IT IS SO ORDERED.