William and Catherine HOOKS, individually and as parents and natural guardians of Christopher Hooks, a minor, Plaintiffs–Appellants,

v.

CLARK COUNTY SCHOOL DISTRICT and Brian Cram, in his official capacity as Superintendent of the Clark County School District, Defendants–Appellees.

No. 98–17271.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 12, 2000

Filed Sept. 21, 2000

Michael P. Farris, Purcellville, Virginia, Home School Legal Defense Association, for the plaintiffs-appellants.

Jon Okazaki, Office of General Counsel, Las Vegas, Nevada, for the defendants-appellees.

Before: GOODWIN, BRUNETTI, and THOMAS, Circuit Judges.

GOODWIN, Circuit Judge:

William and Catherine Hooks appeal the dismissal of their action against Clark County School District and its Superintendent. Their case presents novel issues regarding (1) the interpretation of the Individuals with Disabilities Education Act, 20 U.S.C. § 1400 et seq. (1996) ("IDEA"), and (2) the constitutionality of denying benefits to home-educated children. We hold that, pursuant to the IDEA, States have discretion in determining whether home education constitutes an IDEA-qualifying "private school." Further, the challenged regulatory scheme does not unconstitutionally offend equal protection principles or infringe on the parents' liberty interest in guiding their child's education.

## BACKGROUND

Christopher Hooks is a child who receives his education at home from his parents. In August 1996, Christopher was

deemed to be medically eligible for speech therapy services. The Hooks family requested subsidized services, even though there has been no claim that home education is necessary to treat his disability, and even though Christopher was not enrolled in any school within the school district. The school district, in accordance with its policy, opted not to provide the services.

In Nevada, children taught at home can be excused from Nevada's compulsory attendance law by receiving an exemption under Nevada Revised Statute ("NRS") 392.070 (1997) (the "home-education exemption"). Exempted educational environments avoid certain regulatory requirements imposed on institutional "private schools" in Nevada. *See, e.g.,* NRS 651.050(2)(k) (1997) (imposing requirements on "private schools"); NRS 394.251 (1997) (same); NRS 394.130 (1997) (same).

The Hooks family has applied for and received the home-education exemption since the 1994–95 school year. For the 1996–97 school year, the Hooks family requested that Christopher be exempted from Nevada's compulsory attendance law and also that he receive speech therapy services provided in Nevada's schools. As noted, the school district refused the services.

By letter in March 1997, the school district explained that the school district's Policy 5111(IV) provides that, in accordance with Nevada law, students who receive the home-education exemption "do not have access to instruction and/or ancillary services with the public schools." *Id.* The school district suggested that the parents either (1) seek an exception from the Board of Trustees, or (2) enroll Christopher in the school district, where he would have an individualized education plan tailored to his needs. The Hooks family chose neither option.

Instead, in June 1997, the Hooks family filed a complaint with the Nevada Department of Education (the "NDOE"), which the NDOE rejected. The NDOE relied on a policy letter from the United States Of-

fice of Special Education Programs ("OSEP"), which declares that States have discretion to determine whether or not home education qualifies as a "private school or facility" that implicates IDEA requirements. *See* U.S. Dept. of Educ., OSEP, *Policy Letter to Williams,* 18 IDELR 742 (Jan. 22, 1992). Because exempted home education does not qualify as a "private school" under Nevada law, NRS 394.103 (1997), the NDOE upheld the school district's policy.

In January 1998, the parents filed a federal action, alleging that the school district's policy violated the IDEA and the Fourteenth Amendment. The parents sought (1) declaratory relief that Christopher is entitled to receive speech therapy services, (2) reimbursement for the parents' payments for private speech therapy services, and (3) attorneys' fees. The district court granted summary judgment in favor of the school district, and the parents appealed. We affirm.

### JURISDICTION & STANDARD OF REVIEW

We have jurisdiction to review the summary judgment pursuant to 28 U.S.C. § 1291, and we review *de novo. See Washington v. Garrett,* 10 F.3d 1421, 1428 (9th Cir.1993). To successfully challenge a summary judgment, the plaintiffs must point to some part of the record that demonstrates a genuine issue of material fact and, drawing all reasonable inferences in the plaintiffs' favor, could convince a reasonable jury to find in their favor. *See* Fed. R. Civ. Proc. 56; *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

### DISCUSSION

**I. Change in Nevada Law**

 After this action was commenced, the Nevada legislature amended state law to provide that "[t]he board of trustees of

each school district shall provide programs of special education and related services for children who are exempt from compulsory attendance pursuant to the home-education exemption and receive instruction at home." Nev. Act Chap. 606, Sec. 45 (1999) (effective July 1, 1999), codified at NRS 392.070(2) (2000). Under the amended Nevada law, "related services" includes "speech-language pathology ... services." NRS 392.070(7) (2000) (referencing 20 U.S.C. § 1401(22)).

Pursuant to this legislation, the school district concedes that it is now required to provide speech therapy to eligible home-educated children, and Christopher has been assessed and deemed eligible for speech therapy services. Thus, there is no need for us to consider whether the district court erred by refusing to enter a declaratory judgment. We remand that matter to the district court for its consideration in light of Nevada's new law.

However, neither the appeal nor the action is moot, because the new law does not resolve the reimbursement claim for the payments already made by the parents for Christopher's therapy, to which we now turn. *Cf. Capistrano Unified School Dist. v. Wartenberg*, 59 F.3d 884, 890 (9th Cir. 1995) (graduation of disabled student did not moot claims for reimbursement and attorneys' fees).

## II. Statutory and Regulatory Scheme

The IDEA and accompanying regulations provide for special services for three categories of children: (1) students in public schools; (2) children placed in private schools by a public agency; and (3) children placed unilaterally in private schools by their parents. *See* 20 U.S.C. § 1412(1) (1994); 34 C.F.R. §§ 300.400–300.452 (1996); *Nieuwenhuis v. Delavan–Drien School Dist.*, 996 F.Supp. 855, 865 (E.D.Wis.1998). This scheme comports with the current version of the IDEA, as amended in 1997. *See* 20 U.S.C. §§ 1412(1), 1412(10)(A), 1412(10)(B) (2000). Nothing in the language of the IDEA provides services for children who are not

enrolled in school, however "school" is defined.

The Hooks family argues that Christopher is a child of the third category, i.e., a child placed unilaterally in private school by his parents, and thus that he qualifies for services. The regulations in effect at the time of Christopher's request provide that where "parents choose to place the child in a private school or facility," 34 C.F.R. § 300.403(a) (1996), provision shall be made for "special education and related services of [such a] *private school child* [ ]," 34 C.F.R. § 300.452 (1996), "[t]o the extent consistent with their number and location in the State." *Id.* (emphasis added). The amended, current version of the IDEA regarding "private elementary and secondary schools" reads in similar fashion. *See* 20 U.S.C. § 1412(10)(A)(i) (2000).

The question we confront is whether Christopher qualifies as a "private school child," i.e., a child placed in a "private school or facility." Neither the IDEA nor the regulations defines or explains what constitutes a "private school."

## III. State Discretion Under the IDEA to Define "School"

The school district contends, and the district court held, that state law controls the definition of "private school" under the IDEA, and that therefore Christopher does not qualify, because exempted home education does not qualify as a "private school" in Nevada. "Private schools," under pre–1999 Nevada law, "means private elementary and secondary educational *institutions. The term does not include a home in which instruction is provided to a child excused from compulsory attendance pursuant to NRS 392.070.*" NRS 394.103 (1997) (emphasis added). Thus, Christopher does not qualify as a "private school" child under Nevada law, and thereby does not qualify for ancillary services under the school district's policy.

The Hooks family does not dispute the school district's interpretation of Nevada law, and we do not address that issue of

state law interpretation. Rather, the appellants contend that Nevada's definition, and by extension the school district's policy, violates the IDEA. The appellants invite us to craft our own definition of "private school or facility" and impose it upon the States from the federal level. We decline this invitation.

Instead, we hold that the IDEA leaves discretion to the States to determine that home education that is exempted from the State's compulsory attendance requirement does not constitute an IDEA-qualifying "private school or facility." In holding that this matter is left to the States, we affirm the district court.

We start with the words of the statutory and regulatory provisions. The common meaning of those words-their plain language-does not require that exempted home education qualify as a "private school or facility." A "school" can be commonly defined as an *"institution* for the instruction of children." Webster's II, New Riverside University Dictionary 1045 (1994) (emphasis added); and an "institution" can be commonly defined as an "established organization or foundation, esp[ecially] one dedicated to public service." *Id.* at 633; *cf.* Black's Law Dictionary 800, 1344 (6th ed.1990) (similarly defining "[i]nstitution" and "[s]chool"). Moreover, a "facility" can be commonly defined as "[s]omething created to serve a particular function," such as "a new mental health *facility.*" Webster's II, New Riverside University Dictionary 460 (1994) (emphasis in original); *cf.* Black's Law Dictionary 591 (6th ed. 1990) (similarly defining "[f]acility").

These common definitions comport almost precisely with Nevada's definition of a private school as a private "institution," which excludes an exempted private home. NRS 394.103 (1997). Under these common definitions, such a home is neither a "school," a "facility," an "institution," an "established organization," nor something created to serve the "particular function" of education. We do not offer this analysis to suggest, and we do not hold, that a State can *never* define "private school"

broadly enough to include home education within the sphere of IDEA-benefitted educational environments. We merely conclude that the plain language does not *compel* such a broad definition.

Second, we look to the interpretation embraced by the policy letter issued by OSEP, which is charged with implementing and enforcing the IDEA. *See* 20 U.S.C. § 1402(a) (2000). According to OSEP, the "determination of whether a home education constitutes private school placement must be made on the basis of state law." OSEP Policy Letter to Williams, 18 IDELR 742, 744. The Supreme Court has taken guidance from an OSEP policy letter, as we do today, to define an ambiguous provision of the IDEA. *See Honig v. Doe,* 484 U.S. 305, 325 n. 8, 108 S.Ct. 592, 98 L.Ed.2d 686 (1988); *see also Mary P. v. Illinois State Bd. of Educ.,* 919 F.Supp. 1173, 1179 (N.D.Ill.1996).

Third, Congress explicitly ratified OSEP's view that States must define the ambit of "private schools." Specifically, the amended IDEA provides *inter alia* that "[t]he term 'elementary school' means a nonprofit institutional day or residential school that provides elementary education, *as determined under State law.*" 20 U.S.C. § 1401(5) (2000) (emphasis added). Elsewhere, the new IDEA's definition of "secondary school" is likewise committed to "State law." 20 U.S.C. § 1401(23) (2000).

■ "When a Congress that re-enacts a statute voices its approval of an administrative or other interpretation thereof, Congress is treated as having adopted that interpretation." *United States v. Bd. of Comm'rs of Sheffield,* 435 U.S. 110, 134, 98 S.Ct. 965, 55 L.Ed.2d 148 (1978); *see also Ward v. Commissioner,* 784 F.2d 1424, 1430 (9th Cir.1986) (describing "legislative reenactment doctrine"). Here, Congress went further than merely silently reenacting the IDEA or tacitly consenting to OSEP's deference to the States; Congress expressly embraced such deference to the States.

Contrary to the contentions of the appellants, leaving such discretion to the States does not clash with Congressional intent. The appellants rely on Congressional findings contained within the IDEA, providing that "state and local educational agencies have a responsibility to provide education for all children with disabilities." 20 U.S.C. § 1400(b)(8) (1996); *accord* 20 U.S.C. § 1400(c)(6) (2000). The school district has not failed in its "responsibility to provide *education* for" Christopher, *id.* (emphasis added); indeed, the school district has offered free enrollment in the public school, replete with subsidized special services. *Cf. Irving Independent School Dist. v. Tatro*, 468 U.S. 883, 890, 104 S.Ct. 3371, 82 L.Ed.2d 664 (1984) (By enacting the IDEA, "Congress sought primarily to make public education available to handicapped children and to make access meaningful.") (internal quotation marks and citation omitted). Nothing in the IDEA requires that school districts provide services to children whose parents have rejected the State's offer of an education and have failed to enroll in any "school," under the State's definition of that word.

Nevada's 1999 legislation providing for speech therapy for home-educated students is but additional evidence that federal courts need not strain to capture this subject from the States. On this issue, we affirm the district court.

## IV. Section 1983 Claims

The Hooks family also brings suit under 42 U.S.C. § 1983 and contends that the school district's policy violates equal protection and due process principles implicated by the Fourteenth Amendment of our Constitution. We reject these claims as well, because the challenged regulatory scheme does not regard a suspect classification, impinge upon a fundamental right, or fail to bear a rational relationship to a legitimate governmental purpose.

■ To withstand Fourteenth Amendment scrutiny, a regulation must bear only a rational relation to a legitimate governmental purpose, unless the regulation implicates a fundamental right or an inherently suspect classification. *See City of New Orleans v. Dukes*, 427 U.S. 297, 303, 96 S.Ct. 2513, 49 L.Ed.2d 511 (1976) (per curiam) (regarding equal protection); *Richardson v. City and County of Honolulu*, 124 F.3d 1150, 1162 (9th Cir.1997), *cert. denied*, 525 U.S. 871, 119 S.Ct. 168, 142 L.Ed.2d 137 (1998) (regarding due process). Children educated at home do not comprise a suspect class, so we address in turn whether the regulatory scheme infringes on a fundamental right or lacks a rational basis. *See J.B. v. Washington County*, 127 F.3d 919, 931 (10th Cir.1997) (holding that home-educated children do not comprise a suspect class); *cf. KDM v. Reedsport School Dist.*, 196 F.3d 1046, 1051 (9th Cir.1999) ("parochial school students are not a suspect class").

### A. Due Process

■ Addressing the first of these issues, we hold that the regulatory scheme does not unconstitutionally infringe on the parents' liberty interest in directing Christopher's education. Subject to "reasonable government regulation," *Runyon v. Gonzales*, 427 U.S. 160, 178, 96 S.Ct. 2586, 49 L.Ed.2d 415 (1976) (citations omitted), the Due Process Clause of the Fourteenth Amendment does protect the "liberty of parents and guardians to direct the upbringing and education of children under their control." *Pierce v. Society of Sisters*, 268 U.S. 510, 534–535, 45 S.Ct. 571, 69 L.Ed. 1070 (1925) (striking down compulsory education law); *see also Troxel v. Granville*, 530 U.S. 57, 120 S.Ct. 2054, 2060, 147 L.Ed.2d 49 (2000); *Wisconsin v. Yoder*, 406 U.S. 205, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972); *Meyer v. Nebraska*, 262 U.S. 390, 399, 43 S.Ct. 625, 67 L.Ed. 1042 (1923). This right is among those that have often been classified as "substantive due process." *E.g., Troxel*, 120 S.Ct. at 2065 (Souter, J., concurring) (citation omitted). Although we avoid giving currency to the anomalous conflation of substance and process, we acknowledge that

some liberties have been deemed so fundamental that the only process of law that would suffice as *"due* process of law" for their derogation would be amending the Constitution. *See* U.S. Const. amend. VIX, § 1 ("nor shall any State deprive any person of ... liberty ... without due process of law.").

Courts outside our Circuit have applied the *Pierce* parental liberty to a right of parents to educate their children at home, and these courts have held that any such right is subject to reasonable regulation. *See, e.g., Murphy v. Arkansas,* 852 F.2d 1039, 1044 (8th Cir.1988); *Clonlara, Inc. v. Runkel,* 722 F.Supp. 1442, 1458 (E.D.Mich. 1989); *People v. Bennett,* 442 Mich. 316, 327, 501 N.W.2d 106 (1993); *State v. De-LaBruere,* 154 Vt. 237, 577 A.2d 254 (1990); *In re Charles,* 399 Mass. 324, 504 N.E.2d 592 (1987). As these cases suggest, identifying a general parental right is far different than concluding that it has been infringed.

We locate no infringement here. The school district's policy does not prohibit the Hooks family's desired educational option—indeed, Christopher currently and legally receives his education at home. The school district's policy, in accordance with pre–1999 Nevada law, merely requires that certain benefits attached to school attendance be in fact attached to "school" attendance.

A recent case in the Tenth Circuit concerned a similar issue. In *Swanson v. Guthrie Independent School Dist. I–L,* 135 F.3d 694, 699–700 (10th Cir.1998), our sister Circuit held that a school district's refusal to allow a home-educated child to attend classes part-time did not infringe on the parents' right to direct their child's education. The *Swanson* court held that parents had no constitutional right "to send their children to public school on a part-time basis, and to pick and choose which courses their children will take from the public school." *Id.* at 700. As in *Swanson,* the Hooks family does not have the right to "pick and choose" the services offered by the school district.

Parents in Nevada who teach their children at home pursuant to the NRS 392.070 home-education exemption are not subject to the same educational and institutional controls that guide educators in institutional private schools or public schools. For example, a "private school" in Nevada is considered a "[p]lace of public accommodation," and thus is subject to expanded legal obligations. *See* NRS 651.050(2)(k); *cf. Clark County School Dist. v. Buchanan,* 112 Nev. 1146, 924 P.2d 716 (1996) (requiring institutional school to admit helping dogs). "Private schools" are required to have a license. *See* NRS 394.075 (1997) (defining "license"); NRS 394.251 (1997) (license requirement). Furthermore, "instruction in the subjects required by law for pupils in the public schools shall be required of pupils receiving instruction in such private schools." NRS 394.130 (1997).

Under the circumstances of this case, attaching receipt of IDEA services to institutional school attendance, and fulfillment of the according regulatory requirements, constitutes "reasonable government regulation" that does not offend our Constitution. *Runyon,* 427 U.S. at 178, 96 S.Ct. 2586. Put differently, even if the parents have a constitutional right to educate Christopher at home, they do not have a constitutional right to state-funded speech therapy services.

### B. Equal Protection

When neither a fundamental right nor a suspect classification is implicated, a classification "must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis" for it. *Heller v. Doe,* 509 U.S. 312, 320, 113 S.Ct. 2637, 125 L.Ed.2d 257 (1993) (citations omitted). The drafters need not actually articulate this basis. *See id.* (citations omitted).

The appellants challenge two separate governmental directives: (1) the school district's policy denying services to home-

educated children, and (2) the IDEA's delegation to States of the power to make such a denial. Both offer rational bases and thereby survive equal protection challenge.

■ Nevada and its school districts have a legitimate interest in promoting educational environments that fulfill those qualifications that the State deems important. Limiting IDEA services to qualified "private schools" reasonably advances that interest by steering scarce educational resources toward those qualified educational environments.[1] *Cf. Murphy v. Arkansas*, 852 F.2d at 1044 (holding that Arkansas's regulation of home education, but not private schools, was rationally related to State's interest in insuring that its citizens were being properly educated). Moreover and relatedly, school districts also have a legitimate interest in maximizing the utility of scarce funds. This interest is likewise reasonably advanced by limiting services to those environments that are regulated, monitored, and which might offer beneficial economies of scale.

■ State discretion under the IDEA to define "private schools" also has a rational basis. The appellants contend that even if the school district's policy is constitutional, the IDEA's deference to States on this matter offends rationality by creating haphazard patchwork in which the provision of IDEA benefits varies from state to state. We see no need to rend this patchwork. Indeed, the very complexity of regulatory schemes surrounding state education counsels in favor of Congress leaving some definitional matters to the States.

The Supreme Court has recognized that education is an area "where States have historically been sovereign," *United States v. Lopez*, 514 U.S. 549, 564, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995), and the IDEA advances a legitimate purpose by preserving some of that sovereignty. Neither the Constitution nor the IDEA abrogates the IDEA's preservation of a portion of the "deeply rooted tradition of state and local control over education." *Bennett v. New Jersey*, 470 U.S. 632, 634, 105 S.Ct. 1555, 84 L.Ed.2d 572 (1985). In rejecting the appellants' constitutional challenges, we affirm the district court.

## CONCLUSION

We hold that, pursuant to the IDEA, States have discretion to determine whether home education constitutes an IDEA-qualifying educational environment. We also hold that the school district's policy of limiting IDEA funds to institutional schools does not unconstitutionally offend equal protection principles or infringe on the parents' liberty interest in guiding their child's education. We remand to district court so that it may dispose of this case in accord with this opinion and with new Nevada law.

Accordingly, we AFFIRM in part and REMAND.

---

1. Nothing here is meant to suggest that the *Pierce* parental right warrants only rational-basis review. The "reasonable government regulation," *Runyon*, 427 U.S. at 178, 96 S.Ct. 2586, to which the right is subject might not include every regulation that is rationally related to some legitimate governmental interest. We leave resolution of this issue to a future case that necessitates it.